## Northampton Borough Municipal Authority v. Remsco Associates Inc.

*Harry A. Dower* and *Charles R. Osinski*, for plaintiff.

*John C. Fenningham*, for defendants.

*Howard S. Epstein* and *Robert E. Simpson, Jr.*, for additional defendants.

DIEFENDERFER, *J.*, December 4, 1981—This matter is before the court pursuant to petitioner's motion for sanctions. Oral argument was heard before the court on August 26, 1981.

On June 24, 1980, plaintiff filed a complaint in assumpsit pursuant to a construction contract between plaintiff and Remsco Associates, Inc. (hereinafter respondent), alleging late performance and seeking $18,994.00 in liquidated damages. On September 3, 1980, respondent filed an answer, new matter and counterclaim. On October 13, 1980, respondent joined Fischer & Porter Company as an additional defendant. On December 9, 1980, plaintiff joined Gannett Fleming Corddry and Carpenter, Inc., (hereinafter petitioner) as an additional defendant. Petitioner filed an answer, new matter and counterclaim.

The parties have pursued discovery through depositions, requests for documents, inspection of documents and written interrogatories.

On February 2, 1980, petitioner served respondent with written interrogatories. After being granted several extensions of time, respondent on or about June 24, 1981, filed answers in which certain objections were stated in lieu of answers.

On July 23 and 24, 1981, a Mr. Warren Doscher was deposed at the office of counsel for petitioner. During the depositions, Mr. Doscher identified two documents, an "analysis of delay" and a "chart" which had not been previously identified by respondent in its partial answers to interrogatories. While petitioner was questioning Mr. Doscher with respect to the amount of delay allegedly attributable to certain events during the construction project, Mr. Doscher indicated that while in the employ of respondent, he had determined the amount of delay and that this information was contained in the "analysis of delay" which he prepared. Mr. Doscher indicated he could not remember the amount of delay and that the "analysis of delay" was the only document which could refresh his

recollection. Counsel for respondent objected to the questions relating to the "analysis of delay" and the chart based upon the attorney-client privilege, the work-product privilege as set forth in Pa.R.C.P. 4003.1 and 4003.3, and that discovery as to the amount of delay was not yet complete.

## I.
## MOTION FOR SANCTIONS—INTERROGATORIES

Petitioner contends that respondent's answers to the interrogatories listed below are for various reasons insufficient. Accordingly, on August 11, 1981, petitioner filed a motion for sanctions pursuant to Pa.R.C.P. 4019.

Interrogatory 33(c): Identify all documents which describe, refer, relate to, show, support or deny such contention. (See question and answer to No. 32 contention.)

Respondent answered this question by referring to Addendum II, Item 31, from which the applicable section (Item 31(b)) reads as follows: "Various letters of transmittal of Remsco and the engineer, minutes of pre-construction job conference dated February 21, 1975 Item (9)."

Petitioner maintains that this answer is incomplete in that no specific documents are identified and, therefore, runs afoul of Pa.R.C.P. 4006(b).

Rule 4006(b) provides that where the requested information may be devised or ascertained from a party's records, the requested party has an option to produce the records for inspection rather than detailing the information in his answer. The purpose of this subdivision is to place the burden of discovery upon the party to be benefited where the burden is substantially the same for both parties.

Rule 4006(b) substantially copies F.R.C.P. 33(c) however, goes beyond F.R.C.P. 33(c) by making the option applicable to all records and not just business records.

The interrogating party is protected against abuse of this subdivision through the requirement that the burden of ascertaining the answer be substantially the same for both parties. Accordingly, the answering party must "specify the records from which the answer may be derived."\* Rule 4006(b), however, does not address the issue of the degree of specificity of identification of the record which is required. If the answering party gives a vague description of the record sought, the burden of discovery imposed upon the interrogating party would be heavier than that upon the answering party due to the latter's familiarity with said records. To require an extremely detailed description, however, would unnecessarily provide the interrogating party with grounds to file for a motion for sanctions for lack of sufficient description of the records sought, thereby opening the door for delay. F.R.C.P. 33(c) does address the issue of specificity of description. "A specification shall be in sufficient detail to permit the interrogating party to locate and to identify as readily as can the party served, the records from which the answer may be ascertained." F.R.C.P. 33(c).

In applying the law to respondent's answers to interrogatory 33(c), the court finds the answer referring to "various letters of transmittal of Remsco and the engineer" to be incomplete for lack of specificity of description as required under Rule 4006(b). This answer would force petitioner to guess which letters are being referred to, thereby

---

\*Pa.R.C.P. 4006(b).

imposing a greater burden on the petitioner than is allowed. Respondent's answer referring to "minutes of preconstruction job conference dated Feb. 21, 1975, Item (9)," is a proper answer pursuant to Rule 4006(b) since it specifies with sufficient detail that information necessary to allow petitioner to locate and identify the record from which respondent's answer may be derived, thereby resulting in a substantially similar burden for both parties.

Interrogatories 54, 56, 57, 58, 59 and 60.

All these questions call for respondent to specify and identify facts, witnesses, conversations, etc. used to support a contention made by respondent in a prior answer. Respondent answered all these questions by reference to the answer given in interrogatory 54 which states "not fully determined as of this date; in accordance with Pa.R.C.P. 4006(b), the answer to this interrogatory may be derived or ascertained from an inspection of the business records of Remsco which may be inspected . . . for this purpose at a reasonable time at the business offices of Remsco."

Petitioner contends that the common answer given to all these questions is not identified with sufficient particularity.

The court finds that such a broad statement, namely, that the information sought is ascertainable generally from respondent's "business records" and that these records are available for inspection, is not a sufficient answer under Rule 4006(b). Such an answer would impose on petitioner a mass of records which could more feasibly be researched by the respondent due to the latter's familiarity with the records: United States v. 58.16 Acres of land, Clinton County, State of Illinois, 66 F.R.D. 570 (1975). Thus, respondent would be imposing a greater burden on petitioner and this is clearly contrary to Rule 4006(b).

Interrogatories 69, 70, 71, 72. Do you contend that Gannett Fleming had the authority to halt work at the project because Remsco had fallen behind a construction schedule?

This was interrogatory 69 and the answers to questions 70, 71 and 72 were dependent upon the answer to no. 69. Respondent answered question no. 69 as follows: "This interrogatory seeks to elicit a conclusion of law as well as being premised upon fact(s) in dispute and for those reasons is improper and objectionable." Petitioner specifically denies that it had fallen behind any construction schedule and that, therefore, this interrogatory seeks to elicit a conclusion of law premised not upon a fact or application of law to fact, but upon a disputed allegation and is consequently not within the purview of Pa.R.C.P. 4006(a)(2).

Petitioner contends that by failing to file timely objections, respondent waived its right to object to said interrogatories as provided by Pa.R.C.P. 4006(a)(2).

Under present discovery rules, objections to interrogatories are governed by Pa.R.C.P. 4006(a)(2) which provides:

Each interrogatory shall be answered fully and completely unless objected to, in which event the reasons for the objection shall be stated in lieu of an answer. The answers shall be signed by the person making them, and the objections shall be signed by the attorney making them. The statement of an objection shall not excuse the answering party from answering all remaining interrogatories to which no objection is stated. The answering party shall file and serve a copy of the answers, and objections if any, within thirty (30) days after the service of the interrogatories. The party submit-

ting the interrogatories may move the court to dismiss an objection and direct that the interrogatory be answered.

While Rule 4006(a)(2) provides that objections to interrogatories shall be filed within 30 days, nothing suggests that objections not raised within the thirty day period are waived. Rule 4019(a)(2) contains the only waiver provisions within the rules of discovery. Under this rule, failure to answer written interrogatories is objectionable only if a party has filed objections or applied for a protective order. There is, however, no statement that all objections must be filed within 30 days in this rule either. Furthermore, this rule permits objections to be raised through an application for a protective order and Rule 4012 sets forth no time period within which a protective order must be sought.

In the case at bar, respondent contends that petitioner's request is objectionable since it calls for a conclusion of law based on a disputed fact and is, therefore, outside the scope of Rule 4006(a)(3) which would otherwise allow discovery.

If petitioner's theory is followed, this court would be forced to require a party to disclose information (assuming a proper objection exists) which he may be specifically by law relieved of the burden of disclosing. Hall v. Sears Roebuck & Co., 14 D. & C. 3d 231 (1980). A distinction must be drawn between those objections based on technicalities or forms of objections and those which relate to the content of the interrogatory: Carney v. Brillson, 68 D. & C. 2d 764 (1975). Respondent's objection clearly relates to the content of the interrogatory in question since it is the substance of the interrogatory and the information attempted to be elicited therein which respondent objects to and not the form of the question.

In addition, the briefs for both parties indicate that petitioner granted respondent several extensions of time to answer the interrogatories. Since a party has the right to answer or object to an interrogatory in the same instrument Rule 4006(a)(2), the extension granted to respondent must implicitly include time to object as well as to answer.

Therefore, having concluded that the thirty day limit of Rule 4006(a)(2) does not constitute a waiver, the issue is whether or not respondent's objection is proper in lieu of Pa.R.C.P. 4006(a)(3). Rule 4006(a)(3) states:

An interrogatory otherwise proper is not objectionable solely because an answer will involve an opinion or contention that relates to a fact or the application of law to fact. The court may order that such an interrogatory need not be answered, if at all, until after other designated discovery has been completed or until a pre-trial conference or other later time.

The main issue raised with respect to the cases permitting such interrogatories is whether or not discovery is complete enough so that the answering party fully knows what theory or contention it is going to pursue so that it is not chained into the theory expounded in the answers. Requests for opinions which call for the application of law to fact are most useful in narrowing the issues and scope of trial and preventing surprise.

Since discovery has proceeded to nearly six months, it appears that respondent should know what theory or contention he is going to present. Therefore, in an effort to promote the purpose and policy of discovery, more specifically the purpose behind Rule 4006(a)(3), the court holds that respondent must answer interrogatories 69, 70, 71 and 72.

Interrogatory 73. Identify all questions which arose under the contract relative to the rate of progress, including for each question:

    a.  The date it arose

    b.  The subject matter of the question

    c.  Identify the person who raised the question

    d.  Identify the person to whom the question was raised.

Respondent contends that to answer this interrogatory would require an "unreasonable investigation . . . and would cause unreasonable burden and expense, . . ." and is, therefore, improper and objectionable. Respondent further contends that this interrogatory is overly vague and broad.

Petitioner maintains that respondent's objections are improper in that respondent failed to properly demonstrate why the production of the information requested is burdensome.

The first question this court must decide is whether or not interrogatory 73 is vague or overbroad. It is settled law that interrogatories must be tailored to the case and proper practice cannot include the filing of broad, generalized "shot gun" type interrogatories: Stitt v. Murray & Barbetti, 35 Beaver 29 (1975). On the other hand, wide ranging and mutual discovery protects both parties against surprise evidence which can be discredited or proven false if there is an opportunity to investigate the matter and produce rebutting facts. Resolution of these competing interests must be had by resorting to the facts of each case. In the instant case, interrogatory 73 calls for the disclosure of all questions relative to the rate of progress. Since the merits of the case turn on an alleged breach of contract by respondent for undue delay, the information sought by their interrogatory should be readily available and known to respondent since he will undoubtedly

need it for the preparation of his defense or counterclaim. Therefore, the form of the interrogatory is not vague or overbroad as applied to the facts of the instant case.

Whether or not respondent's answer to interrogatory 73 in the form of an objection is defective is no longer in issue, since this court finds that to answer said interrogatory would not be an unreasonable burden and expense. As previously discussed, much of the information sought will undoubtedly be available since respondent will need it in the preparation of his defense or counterclaim. See Erone Corporation v. Skouras Theatres Corporation, 22 F.R.D. 496 (1958).

II.
MOTION FOR SANCTIONS—DEPOSITIONS

The policy promoted by the attorney/client privilege is to foster an open and uninhibited dialogue between client and counsel. In re Westinghouse Electric Corporation Uranium Contracts Litigation, 76 F.R.D. 47 (1977). This privilege, however, is usually applicable only to communications from the client to his counsel: 42 Pa.C.S.A. §5928; Nelson v. Himes, 62 D. & C. 2d 748 (1973); Eisenman v. Hornberger, 44 D. & C. 2d 128 (1967). Even though section 5928 makes specific reference only to communication from client to counsel, there is authority which applies the privilege of communication from counsel to client. National Bank of West Grove v. Earle, 196 Pa. 217 (1900); Willis v. Pennsylvania Millers Mutual Insurance Co., 14 D. & C. 3d 705 (1980). This latter approach to the application of the privilege seems to only be applicable where the very purpose of the privilege would be contravened by disclosure.

In the instant case respondent, through Mr.

Doscher, is not being asked to disclose the substance of any such communication. Rather, petitioner's questions attempt to discover the specific facts upon which respondent bases certain general allegations relative to the amount of delay allegedly caused by petitioner. Since these facts were not the subject of any communication between client and counsel or counsel and client, but rather counsel and a third party (Mr. Doscher), such facts are clearly not within the perimeters of the attorney/client relationship.

Counsel for respondent urges this court to follow the rationale set out in Upjohn Company v. United States, No 79-336 (U.S. filed January 13, 1981) wherein the court held that the scope of the attorney/client privilege as applied to a corporate client is not limited to those corporate officers who play a substantial role in formulating corporate decision making, but rather must turn on a case by case determination since employees at all levels of the corporate hierarchy may possess the information which will form the basis for the attorney's advice to the corporation. Thus, the court in Upjohn held that questions prepared by corporate counsel and distributed by him to certain employees were not subject to disclosure since the responses contained therein fostered the very purpose and policy of the privilege.

Respondent's theory being that since Mr. Doscher was an employee of the respondent's corporation at the time the "analysis of delay" and the "chart" were made, the Upjohn approach should apply. Even if the court does follow Upjohn, the privilege is not applicable to the instant case. Mr. Doscher testified that the information used to construct the "analysis of delay" and ultimately the "chart" was obtained not from personal informa-

tion from employees, but rather from superintendent's daily reports and various change orders. There is no evidence that disclosure of the amount of delay would discourage or inhibit full and frank communication between a corporation and its employees for the purpose of seeking legal advice.

As to the contention that the information sought constitiutes the "work product" of counsel, resort must be had to Pa.R.C.P. 4003.3 which states:

Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his conclusion, opinions, memoranda, notes or summaries, legal research or legal theories. With respect to the representative of a party other than the party's attorney, discovery shall not include disclosure of his mental impressions, conclusions or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics.

Further, the Explanatory Note-1978 for Rule 4003.3 provides in pertinent part as follows:

The essential purpose of the Rule is to keep the files of counsel free from examination by the opponent, insofar as they do not include written statements of witnesses, documents or property which belong to the client or third parties, or other matter which is not encompassed in the broad category of the "work product" of the lawyer . . . The Rule is carefully drawn and means exactly what it says. It immunizes the lawyer's mental impressions, con-

clusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more.

Nothing in the rule or commentary indicates that the narrow scope of the rule was meant to apply to facts upon which general allegations (relating to delay of performance) are based. In Claster v. Citizens General Hospital, 14 D. & C. 3d 243 (1980), the court held that a defendant hospital may discover from plaintiff, facts underlying the allegations of the complaint made known to him by his attorney as a result of counsel's investigation of the case (including facts and opinions of a medical expert, not expected to testify, concerning defendant's alleged negligence). The Claster case involved the application of Rule 4003.3.

In the case at bar, the research and investigation which culminated in the "analysis of delay" and the "chart" was not solely performed by counsel, but in conjunction with a third party (Mr. Doscher). The record of the deposition does indicate that the "analysis of delay" did include some of counsel's conclusions of law and that counsel did give verbal instructions to Mr. Doscher. However, the fact that counsel merely asserted the privilege (work product) does not of itself allow complete sanitization of matters which may have been a result of personal observations of Mr. Doscher, and not that of counsel's legal conclusion.

Where non-privileged facts are intertwined with information which is conceivably privileged, the critical factor becomes availability of non-privileged facts from other sources, and where no other sources exist, balance must be struck in favor of distilling, if possible, non-privileged facts from attorney's documents, with entire contents of documents being required to be produced if such distil-

lation becomes impossible. 10 Goodrich-Amram 2d §4003.3:2, Footnote 74.

Moreover, taking note of the fact the Mr. Doscher, one of respondent's prime witnesses, is no longer in this jurisdiction, and that respondent cannot guarantee his production for another deposition prior to trial, this Court cannot condone the possibility of a "surprise" presentation of the "analysis of delay" and/or "chart" at the time of trial.

Respondent's final contention that the discovery as to the alleged amount of delay is not complete, must also fail. Whether or not Remsco has completed its determination of an evaluation of delay, petitioner should be entitled to know the present *facts* with regard to this issue.

Respondent cited two cases as authority for its position, namely, Washkow v. Albert Einstein Medical Center, 71 D. & C. 2d 129 (1975) and Miller v. Patton, 6 D. & C. 3d 760 (1978). Both of these cases involve issues of medical malpractice wherein defendants sought to discover information possessed by plaintiffs relative to the alleged negligent acts of defendants. The courts in both cases held such discovery was premature; that plaintiffs must have sufficient time to complete their own discovery. Medical malpractice cases, however, are distinguishable from contract cases, since proof of breach in the latter type of case. Consequently, the holdings in these two cases support the policy of not forcing a party to be chained into a specific theory prematurely.

In the case at hand, respondent's theory is clear in that petitioner's actions relative to contractual performance caused undue delay. Without disclosure of the factual basis of petitioner's alleged delay, petitioner would be unable to properly evaluate its case or prepare for trial.

Wherefore, this court holds that respondent must disclose the factual basis or other relevant facts which constitute the said "analysis of delay" and/or "chart," exempting those conclusions of law which counsel provided. Specifically, respondents must disclose amounts of delay allegedly attributable to petitioner.

## ORDER

Now, December 4, 1981, defendant, Remsco Associates, Inc., is directed to answer the interrogatories and provide discovery consistent with this opinion.